THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| BRETT'S TOWING, INC., et al., | ) | |
| Plaintiffs, | ) | Case No.1:05CV48 DS |
| vs. | ) | MEMORANDUM DECISION |
| LT. JOHN MITCHELL, et al., | ) | |
| Defendants. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

I. INTRODUCTION

This action arises out of the suspension of a Utah towing company from a towing rotation system used by Section Two of the Utah Highway Patrol (UHP). Plaintiffs sue UHP officers Lt. John Mitchell and Captain Jeff Graviet (defendants) for the alleged deprivation of constitutionally protected property interest without due process under 42 U.S.C.S. § 1983. Plaintiffs' claim that they had a protected property interest in being called to respond to UHP requests for towing services, and in turn seek monetary damages and equitable and injunctive relief restoring them to their status as competent towers in the towing rotation system

Brett's Towing is a towing operation in Ogden and the defendants are commanding officers for UHP Section Two in Northern Utah. The defendants temporarily suspended Brett's Towing from responding to UHP wrecker dispatch calls after one of the company's drivers responded to a UHP dispatch call while intoxicated. UHP initially issued a temporary suspension for Brett's Towing and its affiliates from responding to tow requests from the UHP, pending the outcome of a follow-up investigation in the interest of public safety.

The joint follow-up investigation performed by the Utah Department of Transportation (UDOT) and UHP revealed that Brett's Towing forged medical cards for some of its drivers in violation of federal and UDOT regulations. Such cards verify a driver's medical fitness to operate a commercial vehicle, and without such, a driver is not authorized to operate. As a result of the investigation, the Utah Department of Public Safety filed forgery charges against Brett's Towing and the UHP suspended Brett's Towing indefinitely from responding to UHP calls, pending the outcome of the criminal charges. The UHP still prohibits Brett's Towing and its affiliates from responding to UHP tow requests.

In UHP Section 2, all UHP wrecker dispatch calls are funneled from on-site UHP officers to the Weber Consolidated Dispatch Center (Dispatch Center). The Dispatch Center handles all dispatch needs for the UHP and Weber and Morgan County emergency services, and uses Central Towing Dispatch (Central Towing) to provide tow truck services to these entities. Central Towing is operated by a third-party, is a private entity composed of multiple towing companies, and the towing companies pay a fee to be placed on the rotation list maintained and used by Central Towing in order to dispatch wreckers in response to tow-service requests from the UHP and others. Central Towing works with The Ogden Weber Towing Association (OWTA) to provide a central clearing house for wreckers for law enforcement agencies in Weber and other counties in Northern Utah.

Defendants have moved to dismiss plaintiffs' claims pursuant to Fed. R. Civ. P. 56-1 (b). Defendants argue that plaintiffs' claims are barred by the doctrine of qualified immunity and they are entitled to summary judgment based on the qualified immunity of the UHP officers. Defendants also argue that they are entitled to summary judgment based on the plaintiffs'

inability to establish a constitutionally protected property interest in the towing rotation system used by UHP Section Two.

## II. ANALYSIS

*A. Whether the defendants are entitled to qualified immunity.*

The court cannot state the proper analysis of a motion for summary judgment based on qualified immunity better than the defendants:

> [w]hen a government official raises a qualified immunity defense, courts must engage in a two-step inquiry: first, the court must determine whether the facts show that the official's conduct violated a constitutional right; second, the court must determine whether the right was clearly established. See Hope v. Pelzer, 122 S.Ct. 2508, 2513-15 (2002); Saucier v. Katz, 533 U.S. 194, 200 (2001); see also Mick v. Brewer, 76 F.3d 1127, 1134 (10th Cir. 1996) ... If no constitutional right would have been violated under the facts, no further inquiry is necessary and the official is entitled to qualified immunity. Saucier at 201.

Defendants' Memorandum in Support of Motion for Summary Judgment, 6.

This court finds that there is no controlling case law or a Utah statute or regulation that would have provided the defendants with adequate notice that their conduct (suspending Brett's Towing from responding to UHP calls) violated a clearly established constitutional right. See Camfield v. City of Okla. City, 248 F.3d 1214, 1228 (10th Cir. 2001) ("A constitutional right is clearly established when there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains." (Quotation marks, alteration and citation omitted.)).

3

Circuit Courts throughout the country have dealt with numerous cases related to towing rotation schemes and state created property interests. See Abercrombie v. City of Catoosa, 896 F.2d 1228 (10th Cir. 1990); Piecknick v. Pennsylvania, 36 F.3d 1250; Pritchett v. Alford, 973 F.2d 307 (4th Cir. 1992). In each of the cases, the courts have determined that property interests in towing rotation schemes exist when created, supported, or established by state statute, regulation, or decision.

Plaintiffs argue that the Tenth Circuit has clearly held that a property interest in a towing rotation established pursuant to a state statute or regulatory scheme is protected by due process. This claim is correct, but not fully applicable in the case at hand. In Abercrombie, the Tenth Circuit held that Okla. Stat. tit. 47, § 955 *required* certain cities to make wrecker referrals in accordance with the towing scheme created by the statute. Abercrombie at 1231-1232. The statute stated that "[i]n cities of less than fifty thousand (50,000) population, all such licensed wrecker operators located near or in the city limits of such cities *shall* be considered as being equal distance and *shall* be called on an equal basis as nearly as possible," and unless otherwise regulated by a local political subdivision, the state statute controlled. Okla. Stat. tit. 47, § 952 (d) (emphasis added). Officers in each city were required to carry a list of qualified wreckers and make wrecker referrals on an equal basis, creating a property interest for the participating wreckers. Veile v. Martinson, 258 F.3d 1180, 1185 (10th Cir. 2001) (referencing Abercrombie at 1231-32).

The Fourth Circuit case of Pritchett v. Alford also dealt with a similar South Carolina statute. 973 F.2d 307 (1992). S.C. Code Regs. § 63-600(A)(8)-(10) required the South Carolina Highway Patrol to "establish wrecker zones and 'wrecker rotation' lists for the zones, and

4

directed that the lists should be administered fairly" and referrals made equally. Pritchett at 317 (citations omitted). Similar to Abercrombie, it was the responsibility of public safety officers and organizations to create and maintain wrecker lists and make referrals on an equal basis. The agreements between the state agencies and the wreckers in Abercrombie and Pritchett were direct agreements, not implied agreements made through an administering third-party contractor, and both the Abercrombie and Pritchett decisions established protected property interests in towing rotation systems because state law required the creation and maintenance of towing rotations in accordance with state statute or regulation.

In making their claims, plaintiffs rely on the following language from Veile: "The existence of a property right...turns on whether the alleged claim of entitlement is supported or created by state law such as a state statute or regulatory scheme or decisional law." 258 F.3d 1180, 1185 (10th Cir. 2001) (quoting Morley's Auto Body, Inc. V. Hunter, 70 F.3d 1209, 1216-17 (11th Cir. 1995)) (emphasis added). In both Veile and Morley's, the Tenth Circuit used this language to emphasize that a state law, regulation, or legal decision related to a specified rotation system must exist in order to establish a constitutionally protected property interest because there were no laws or regulations making mention of the established rotation systems in Veile or Morley's. Both cases dealt with local policies unconnected to state statute, regulatory scheme, or decisional law. Morley's dealt with a towing rotation system, and Veile dealt with a mortuary rotation policy. While a quick reading of the above language found in Veile may suggest that the mere mention of a policy in state law "supports" and creates a property interest, the Tenth Circuit has not established a property interest in a towing rotation system without a statute or administrative regulation mandating the creation, use, and compliance with such a system. It

seems clear that the word "support," as used in Veile and Morley's, has a stronger meaning than what plaintiffs contend.  The state statute or regulation must actually require or mandate the creation of such a system.

In the case at bar, plaintiffs claim that Utah Admin. Code clearly establishes a protected property interest of which the defendants should have been aware, but section R714-600-3(1) of the Utah Admin. Code (2003) merely states that "[t]he [D]epartment [of Public Safety] *may* authorize rotation-dispatch towing services in specific areas of the state." (emphasis added). The binding nature of the regulation is ambiguous at best, suggesting that the regulation is not mandatory and any rotation system established by the UHP is allowed, but is also revocable at any time.

In Veile, the Tenth Circuit held that a coroner rotation policy "was 'laden with ambiguity' in that it was neither mandatory nor binding for any specific period of time," and therefore did not establish a protected property interest for the plaintiffs. 258 F.3d at 1183.  In this case, Utah Admin. Code R714-600 merely "set[s] a procedure for coordinated dispatch services" and *allows* third parties to set up such a towing dispatch system that the UHP can use.  Although no statutes or regulations allowed for the institution of a coroner rotation policy in Veile, the same logic controls.  The Utah rule sets up a procedure allowing third parties to operate towing dispatch services for use by the UHP and others.  Absent express language in the administrative rules creating a property right, plaintiffs cannot assert a property interest in continued participation in the UHP towing list operated and maintained by Central Towing.

The Department of Public Safety (of which the UHP is a part of) "set[s] performance standards for towing companies to be used by the department, " Utah Code Ann. § 53-1-106, but the rotation dispatch services are to be administered by a third-party "*contractor* [that] shall operate a rotation-dispatch program by agreement with carriers," Id. R714-600-3(2) and R714-600-2(2) (italics and emphasis added). Utah state law authorizes third-party contractors (Central Towing Dispatch) to create and administer rotation lists, unlike the state laws and regulations in Pritchett and Abercrombie that required state agencies to create their own lists and administer their own rotation policies.

Plaintiffs have been unable to point to any case law where a protected property interest was created under an optional statute or rooted in a towing rotation system created, maintained, and administered by a third party. Central Towing provides services to other entities besides the UHP, and if UHP ceased to exist, Central Towing would most likely continue to exist on its own without UHP support or following UHP dissolution.

In conclusion, Utah law does not establish a constitutionally protected property interest in UHP towing rotation systems, and even if it did, the "defendants are entitled to qualified immunity based on plaintiff's failure to meet their summary judgment burden of showing defendants' actions violated a constitutional right that was clearly established at the time of the conduct at issue." Veile at 1186. The wording of the statute is ambiguous and the Tenth Circuit has not established a constitutionally protected property interest in any rotation policy without a state statute or regulation mandating the creation of and compliance with such a policy. The officers in Abercrombie and Pritchett were bound by statute to set up and administer their towing rotation system, but the UHP was not similarly obligated.

The UHP officers did not violate a constitutionally protected property interest and assuming arguendo the officers violated such an interest, the protected nature of the interest was not clearly established under Utah statute or controlling case law prior to suspending Brett's Towing from UHP towing requests. For these reasons the defendants are entitled to summary judgment based on qualified immunity.

*B. Whether the plaintiffs have a protected property interest in the towing rotation system used by UHP Section Two.*

As outlined in Section II (A) above, plaintiffs did not have a constitutionally protected property interest in the towing rotation system used by the UHP, and defendants are therefore entitled to summary judgment on this alternative basis as well. Plaintiffs have not established a protected property interest and there is no legal claim upon which relief can be granted. Although the Tenth Circuit has explicitly found that "[q]ualified immunity...does not apply to claims for equitable relief," Kikumura v. Hurley, 242 F.3d 950 (10th Cir. 2001), if plaintiffs have not suffered a constitutional violation, there can be no relief of any kind (monetary, injunctive, or declaratory) because the claim has no legal basis.

III. CONCLUSION

After considering the parties' arguments, the Court has determined that the question before the Court is purely a legal question subject to summary judgment.  For the reasons explained in Section II, IT IS HEREBY ORDERED that  Defendants' Motion for Summary Judgment be granted based on qualified immunity.  IT IS ALSO HEREBY ORDERED that Defendants' Motion for Summary Judgment be alternatively granted due to the lack of a constitutionally protected property interest, vested in the plaintiffs, under Utah law and controlling case law.

Furthermore, IT IS HEREBY ORDERED that (1) Plaintiffs' Motion to Compel and Motion to Determine Sufficiency of Defendants' Objections (Dec, 19, 2005), (2) Plaintiffs' Motion to Strike Objections and Request for Ruling on Objections to Plaintiffs' Interrogatories (Jan. 04, 2006), (3) Defendants' Motion Request for Ruling on Defendants' Motion to Stay Discovery (Jan. 20, 2006), (4) Defendants' Motion to Quash Subpoena Commanding a Third Party to Appear for Deposition (Jan. 26, 2006), (5) Plaintiffs' Objection to Proposed Order (Jan. 30, 2006), and (6) Plaintiffs' Motion for New Trial and/or Rehearing Regarding Order Staying Discovery (Feb. 09, 2006) are moot or resolved based upon the court's grant of Defendants' Motion to Stay Discovery Pending Resolution of Defendants' Motion for Summary Judgment.

IT IS ALSO HEREBY ORDERED that (1) Plaintiffs' Motion for Partial Summary Judgment (Jan. 06, 2006) be denied because plaintiffs have been unable to establish a constitutionally protected property interest in the UHP towing rotation under Utah law  affording them the opportunity for equitable, declaratory, or monetary relief, and (2) Defendants' Motion for Partial Summary Judgment on Plaintiffs' Claims for Injunctive and Declaratory Relief (Jan.

17, 2006) are dismissed because the issues in these motions are subsumed in the court's ruling on summary judgment decided above.

SO ORDERED.

DATED this   16   day of    March   , 20<u>06</u>.

BY THE COURT:

*David Sam*

DAVID SAM
SENIOR JUDGE
U.S. DISTRICT COURT